IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONALD LAMAR MAY, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 22-0392-CG-N |
| | : | |
| SHERIFF HEATH JACKSON, *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Donald Lamar May, an Alabama prison inmate proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). The action is currently before the Court on Defendants' motion for summary judgment.[1] (Doc.41). For the reasons discussed herein, it is ordered that this motion be **GRANTED** and Plaintiff's action be **DISMISSED** in its entirety.

I.   **BACKGROUND AND FACTUAL ALLEGATIONS.**[2]

Plaintiff Donald Lamar May ("May") is suing Defendants Sheriff Heath Jackson, Sergeant Patrick Hendrieth, and Officer Ronald Gibson[3] for using excessive force against him

---

[1] The Court converted the Defendants' Answers, Special Reports, and exhibits to a motion for summary judgment. (Docs. 38, 39).

[2] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

[3] May incorrectly named Officer Ronald Gibson as "Officer Gibbs" in his amended complaint and Sgt. Pat Hendrieth as "Lt. Pat." Defendants have provided the proper names of these defendants in their answer to the suit. (Doc. 39 at 1, n.1). Accordingly, the Court will refer to Defendants as Officer Gibson and Sergeant Hendrieth in this report and recommendation.

while incarcerated at Escambia County Detention Center ("the jail") on January 31, 2021.[4] (Doc. 23).

According to May, on January 31, 2021, while housed in Unit-3 at the jail, May noticed an inmate in the unit turning blue and foaming at the mouth. May attempted to gain the attention of officers by waving at the camera in the unit, as well as through the window. When that was unsuccessful, May hit on the glass window, even though he had been told not to do so. Believing the inmate's life to be in jeopardy, May "proceeded to pound on the glass to alert the" officers of the emergency. (*Id*. at 4). May alleges Sergeant Hendrieth and Officer Gibson entered the cell and pulled the inmate to the side and pushed May to the wall, "while choking him, then lifting Mr. May Donald Lamar off the ground, and then threw Mr. May to the floor." (*Id*. at 5). May alleges he suffered lower back and throat trauma and post-traumatic stress disorder from the incident.

May is suing Sergeant Hendrieth and Officer Gibson for unlawfully assaulting him on January 31, 2021. (*Id*. at 8). May is suing Sheriff Heath Jackson for being "unlawfully assaulted by staff at the Escambia County Detention Center" and further alleges that Sheriff Jackson is responsible for transferring him "off to prison" while his Rule 32 appeal was pending. (*Id*. at 4, 9). May seeks monetary relief in the amount of $700,000.00.[5] (*Id*. at 10).

---

[4] May was held at Escambia County Detention Center as a convicted prisoner after his community corrections sentence was revoked. (Docs. 38-4 at 5-8; 38-5).

[5] May also requests that his Rule 32 petition related to his Attempted Arson II conviction be overturned by the state court. Such relief is unavailable under 42 U.S.C. § 1983. Any challenge to the fact or duration of his confinement must be brought in a petition for habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973).

Defendants have answered the complaint and submitted a special report, with supporting exhibits, denying the allegations asserted against them. (*See* Docs. 38, 39). In support of their position, Defendants have submitted sworn declarations, which are summarized below:

Officer Gibson declares he was not working on January 31, 2021, and did not go to the jail on that day. (Doc. 38-2; *see also* Doc. 38-1 at 24-25).

Sergeant Hendrieth declares he was on duty on January 31, 2021, when he, Officer James Hurley, and Officer Justin Walden responded to a disturbance in Unit 3. While helping the inmate that needed medical attention, "May began to raise his voice and threaten [Sergeant Hendrieth] and act in a confrontational manner." (Doc. 38-3 at 2). May yelled at Sergeant Hendrieth to "do [his] fucking job." (*Id*. at 2-3). Because May failed to comply with orders to stop talking and was creating a security risk, as he was not restrained, Sergeant Hendrieth ordered May to pack his property to be moved to another unit. May refused three direct orders to pack his property and go with Sergeant Hendrieth. Sergeant Hendrieth declares, "I took a step towards inmate May to place my arm around his back and escort him to his cell to get his property. Inmate May violently jerked away, hitting my hand away, and taking an aggressive and threatening stance towards me." (*Id*. at 3). Officer Hurley then completed a takedown of May. Sergeant Hendrieth avers he did not use force on May. May was then escorted out of the unit and to the nurse. (*See* Doc. 38-3).

Sheriff Heath Jackson declares that May was confined at the jail following revocation of his community corrections sentence. The Alabama Department of Corrections (ADOC) contacts the jail when inmates are to be transferred to ADOC custody pursuant to a court order. May was transferred state prison pursuant to an ADOC request. (*See* Doc. 38-4).

Defendants have submitted the Incident Report from January 31, 2021, which corresponds with Sergeant Hendrieth's declaration, reflecting that nondefendant Officer James Hurley used force to take May "to the ground" after May was disrupting and threatening. (*See* Doc. 38-3 at 6-7).

Defendants have further submitted medical records which reflect May was examined immediately following the use of force, where May reported that "he got slammed down by PO" and complained of "left side neck and back pain." (Doc. 38-1 at 17). No redness, swelling, bruising, or open areas were observed at the time he was evaluated. (*Id.* at 17, 20).

3

The following day, February 1, 2021, May received a body chart at 8:40 a.m., where he complained, "they jumped me yesterday and hurt my neck and left arm." (Doc. 38-1 at 18). He complained his left arm, shoulder, and neck hurt. At that time, an abrasion was observed to the right side of May's neck. (*Id.*). On the afternoon of February 1, 2021, pictures were printed of the scratch/abrasion on the right side of May's neck/shoulder that is documented by a nurse as having occurred "from earlier altercation with other inmates." (*Id.* at 21, 23).

After review of the pleadings, the Court ordered that Defendants' Answer, Special Report, and exhibits (Docs. 28, 39) be treated as a motion for summary judgment. (Doc. 41). May has been given the opportunity to oppose the motion. In opposition he has resubmitted portions of institutional records from the jail, including medical records, the January 31, 2021 Incident Report, Officer Gibson's timecard, a grievance related to the January 31, 2021 incident, as well as numerous certificates of completion for training and CEU hours earned. (*See* Doc. 42). May does not however dispute any of the declarations or evidence put forth by Defendants. (*See* Docs. 42-44).

Accordingly, this motion for summary judgment is now ripe for consideration.

## II.     STANDARD OF REVIEW

Summary judgment is proper if the party asking for summary judgment "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The "substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" on summary judgment. *Id.* at 249. Rather, the Court "determine[s] whether there is a genuine issue for trial." *Id.* at 250.

Because Defendants are asking for summary judgment, they must demonstrate, by identifying evidence in the record, the absence of a genuine dispute of material fact or show that the nonmoving party, Plaintiff, does not have evidence in support of some element of his case on which he bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). If Defendants carry their burden, then Plaintiff is required to "'go beyond the pleadings,' and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (*per curiam*) (quoting *Celotex*, 477 U.S. at 324). "[I]f the record taken as a whole could lead a rational trier of fact to find for the nonmoving party," then a genuine issue of material fact exists. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

In considering a motion for summary judgment, courts are required to "view the evidence, draw all reasonable factual inferences, and resolve all reasonable doubts in favor of the non-movant." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (quoting *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020)). This requirement extends only "to the extent supportable by the record." *Id*. (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). Where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III.   DISCUSSION AND ANALYSIS

**A. Immunity Defenses.**

Defendants have asserted immunity defenses. (Doc. 39 at 3). To the extent Sheriff Jackson, Sergeant Hendrieth, and Officer Gibson are being sued in their official capacities, as a

county sheriff and deputies, they are considered employees of the State and are immune from suit pursuant to the Eleventh Amendment, which bars "suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998); *Haywood v. Alexander*, 121 So. 3d 972, 978 (Ala. 2013) (county sheriffs and their deputies are employees of the State).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). While there is no dispute that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (Qualified immunity does not extend to an officer who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." (internal quotation marks omitted and alteration in original).

**B. Claims Under 42 U.S.C. § 1983.**

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v.*

*Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth Amendment excessive force claim against the defendants, a plaintiff must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience"). Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). While not every "malevolent touch" by a prison guard amounts to excessive force, a *de minimis* use of force is cognizable under the Eighth Amendment if it is "repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quotation marks omitted).

1. **Defendant Officer Gibson is entitled to judgment as a matter of law.**

Officer Gibson has carried his burden of showing no genuine issue of material fact exists as to whether he used excessive force against May on January 31, 2021. Defendant Gibson has shown by personal declaration and his timecard that he was not present at the jail on January 31, 2021, the date of the incident. (*See* Docs. 38-2; 38-1 at 24-25). No institutional records related to the incident reflect that Officer Gibson participated in or witnessed the incident. And May has not presented evidence which contradicts these facts.

For these reasons, Officer Gibson is entitled to summary judgment.

2. **Defendant Sergeant Hendrieth is entitled to judgment as a matter of law.**

7

Sergeant Hendrieth has carried his burden of showing no genuine issue of material fact exists as to whether he used excessive force against May on January 31, 2021.

The undisputed evidence demonstrates that May was yelling and being disruptive while officers were attempting to render help to inmate in need in Unit-3 and that May failed to comply with orders to stop talking. It is undisputed that May was ordered to pack his property, three times, and repeatedly refused comply with the orders. It is further undisputed that May jerked away from and/or pushed Sergeant Hendrieth when Sergeant Hendrieth attempted to escort May out of the unit.

The Court starts with the general rule, "prison officers are authorized to use force when a prisoner repeatedly fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) (internal citation omitted). The question to be asked in such a situation is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Factors relevant to this determination include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). The absence of injury is one factor to be considered in determine whether force used was conceivably necessary and may indicate the amount of force used. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Once the need for force ceases, any continued force applied can constitute an Eighth Amendment violation. *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991). When considering these factors, courts afford "a wide range of deference to prison officials acting to preserve discipline

and security, including when considering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F. 3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

The record supports that the force used against May was applied to maintain and restore discipline. *Skrtich*, 280 F.3d at 1300. First, May has not disputed that at the time force was used on him, he was unrestrained and was yelling at Officer Hendrieth, causing disruption and commotion while officers attempted to render emergency medical treatment to another inmate in the unit. May has not disputed that he was given orders to stop talking and failed to comply. May has further not disputed that he failed to comply with multiple orders given to pack his property to be moved to another unit or that he "jerked away from" Officer Hendrieth and hit Officer Hendrieth's hand away. Thus, some degree of force was justified. Second, "[t]he use of a takedown 'is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders. *Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (quoting *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). Third, May's yelling and noncompliance is reasonably interpreted as threatening behavior that creates a security risk under the circumstances. Fourth and fifth, it is undisputed that all force stopped once May was restrained in handcuffs and that he immediately received medical attention. *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009) ("The immediate offer of medical assistance shows an effort to temper the severity of the use of force."). The injuries of back and neck pain, as well as scratches and abrasions to his right shoulder, with no bruising, open areas, or redness (*see* doc. 42 at 9, 11) also supports that the force used was minimal and reasonably necessary to restore order.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Graham v. Connor*, 490 U.S. 386, 396

9

(1989). Viewing the facts in the light most favorable to May, no trier of fact could find that the force used by Officer Hendrieth, or any officer here, was objectively unreasonable, much less that it was used for the sole purpose of inflicting harm. For this reason, Officer Hendrieth is entitled to summary judgment on May's claim of excessive force.

### 3. Defendant Sheriff Jackson is entitled to summary judgment as a matter of law.

Sheriff Jackson has carried his burden of showing he is entitled to summary judgment on May's claims that he is responsible for the "unlawful" assault against May and for wrongfully transferring May to state prison while his Rule 32 appeal was pending.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). First, as previously discussed, the record does not support that any officer used unconstitutional force against May on January 31, 2021. Second, neither has May connected Sheriff Jackson's actions to the force used. *See Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (If a supervisor's liability cannot be established based on the supervisor's personal participation in the complained acts, a plaintiff must show a causal connection between the supervisor's actions and the alleged constitutional deprivation.). May has not suggested that there is a history of widespread abuse at the jail that would put Sheriff Jackson on notice of need to correct the problem. *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.") (quotation marks and citations omitted). May has not alleged that Sheriff Jackson has a policy in place that results in deliberate indifference to inmates' constitutional rights. *Brown v. City of Fort Lauderdale*, 923

F.2d 1474, 1481 (11th Cir. 1991) (A custom is established by showing "a longstanding and widespread practice [such that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it."). Nor has May shown that Sheriff Jackson directed officers to act unlawfully or knew that they would and failed to stop them. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). The record is thus void of any causal connection to the use of force against May and Sheriff Jackson or that the force used was unconstitutional.

As to May's last claim, the law is clear that there is no constitutional right to remain at or be transferred to a certain jail or prison. *See Olim v. Wakinekona,* 461 U.S. 238 (1983); *Montayne v. Haymes*, 427 U.S. 236, 242 (1976). Taking as true that May was transferred from the jail to state prison while his Rule 32 petition was pending, May has failed to establish or allege facts that suggest that the transfer was done in retaliation for filing the postconviction petition or for the purpose of denying him access to the courts. *See Williams v. Brown*, 347 F. App'x 429, 435 (11th Cir. 2009) ("Prison officials may not retaliate against inmates for filing lawsuits or administrative grievances."). The record confirms that May was transferred to ADOC custody pursuant to court order and upon the request of the ADOC and not "for any other reason." (Doc. 38-4 at 2, 5-8). May's community corrections sentence was revoked after he violated the terms and conditions of the program. (*See Id*. at 5-8). The court order confirms that May was "ORDERED to serve the balance of his original sentence of twenty (20) years to be served in the custody of the [Alabama] Department of Corrections." (*Id*. at 8). Additionally, May has failed to carry his burden to establish that he was injured or impeded in attacking his conviction due to the transfer. That is, May has not shown he was hindered from pursuing his appeal or that his appeal was nonfrivolous. *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (To

establish a claim for denial of access to courts, an inmate must show that the underlying claim that he was advancing was a nonfrivolous claim.).

For these reasons, Sheriff Jackson is entitled to summary judgment as a matter of law as to the claims asserted against him.

## IV.   CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in favor of Defendants and that this action be **DISMISSED** in its entirety.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the

disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **3rd** day of **April, 2024**.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**